Opinion by
Mr. Chief Justice Moore.
Plaintiff in error will be referred to as Mountain View. It was organized in 1941 as a cooperative association supplying electrical energy to its members and as such was not subject to the jurisdiction of the Public Utilities Commission. In October 1957 Mountain View sought to be declared a public utility within the meaning of the Public Utilities Act of the State of Colorado in connection with its operation in six named counties; it therefore asked the P.U.C. to issue a certificate of public convenience and necessity authorizing it to provide electrical energy to serve the public in a wide area covering portions of Arapahoe, Elbert, El Paso, Douglas, Lincoln and Washington counties. The area for which the certificate was sought was described by a lengthy metes and bounds description, and buried in the maze of references to section corners, township and range numbers, quarter section corners, and landmarks, there was included the portion of Section 5, Township 13 South, Range 66 West of the 6th P.M., El Paso county, Colorado, lying outside the boundaries of the Air Force Academy site. It is this portion of said Section 5 to which this controversy relates.
The application contained, inter alia, an allegation that inhabitants of the entire area (and more particularly Section 5 above mentioned) were not receiving service from any utility and “have no means of securing electrical service save and by means of the lines of applicant”; and that the granting of the certificate by the Commission would not result in a conflict “with any existing lines, plant or system for furnishing electrical energy.” The certificate as prayed for by Mountain View was issued by the Public Utilities Commission on February 18, 1958.
The city of Colorado Springs was supplying electrical *203 energy outside its corporate limits as a public utility long before Mountain View sought and obtained the above mentioned certificate. On November 29, 1941, the P.U.C. issued a certificate of public convenience and necessity to Colorado Springs authorizing it to serve certain territory outside its city limits which specifically included the above mentioned Section 5. The city actually established service in that section in 1956, and at the time of the proceedings before the P.U.C. was serving at least eleven residential customers located within that section. During the calendar year 1965 the city of Colorado Springs, operating under authority of its 1941 certificate, constructed additional electrical distribution lines in Section 5, and has thereafter provided electrical service therefrom.
On December 14, 1956, Mountain View had attained the status of a public utility in other areas not involved herein. On that date it filed with the Commission an application entitled:
“In the Matter of the Application of Mountain View Electric Association, Inc., Limón, Colorado, for Division of Territory Between Mountain View Electric Association, Inc. and the City of Colorado Springs.”
In this petition Mountain View sought approval of the Commission for an exchange of a portion of its territory, previously certified to it by the Commission, for a portion of the territory previously certified to Colorado Springs. In approving the proposed exchange and defining the territories to be exchanged, it was clearly made to appear that Section 5, Township 13 South, Range 66 West was retained by Colorado Springs within the area certificated to it.
On January 6, 1966, Mountain View filed its complaint before the Public Utilities Commission in which Colorado Springs was named respondent. In the complaint the following relief was sought, inter alia:
“1. That this Commission issue its Order directing Respondent the City of Colorado Springs to cease and *204 desist from extending its electrical distribution lines and facilities into the certificated territory of Mountain View Electric Association, Inc.
“2. That this Commission issue its order directing Respondent the City of Colorado Springs to remove its electrical distribution lines and facilities constructed within the boundaries of the certificated territory of Mountain View Electric Association, Inc., or in the alternative order the said Respondent to sell so much of said facilities to Mountain View as can be used by Mountain View in serving said area.
“3. That this Commission assess such penalty against Respondent as this Commission thinks proper to deter said Respondent from further violations of the laws of the State of Colorado and the orders, decisions and rules of this Commission.”
Colorado Springs answered the complaint and alleged that it was lawfully supplying electrical energy within the area duly certificated to it.
Following the hearing upon the issues the Commission entered lengthy findings setting forth pertinent facts. These findings include the following:
“That, through inadvertence, this Commission certificated that portion of Section 5, east of the Air Force Academy boundary, to each utility.
“That the closest distribution line of Mountain View is 1% miles to the north of the present service and unnecessary duplication could result if Mountain View were to extend its service into Section 5.
“That Section 5, originally certificated to the City, is now being adequately served by the City and Mountain View should not extend its facilities into said Section 5. “That said Section 5 should be removed from the presently certificated area of Mountain View.
“That the City is not in violation of the certificate issued to Mountain- Vieiv and no showing of such alleged violation by respondent of the territory of Mountain *205 View was made by complainant and that the complaint herein should be dismissed.”
The area in dispute accordingly was deleted from the territory certified to Mountain View in 1958. On review in the district court the action of the Commission was upheld.
As grounds for reversal counsel for Mountain View present argument under three captions as follows:
“[A] Decision No. 49651 issued February 18, 1958 by the Commission awarding the disputed territory to Mountain View is final, res judicata and binding upon the parties and cannot be collaterally set aside.
“[B] The action of the Commission in taking certificated territory from Mountain View and giving it to Colorado Springs without a finding that Mountain View is unable or unwilling to serve its certificated territory wrongfully deprives Mountain View of a vested property right without due process.”
The substance of the argument advanced in support of each of the above points may be summarized as follows: (1) That the 1958 certificate of convenience and necessity issued to Mountain View — which authorized it to render service in six counties covering a vast area all of which was described by metes and bounds description — in legal effect removed the disputed area in Section 5 from the territory exclusively certified to Colorado Springs, and gave it to Mountain View; (2) that the courts are powerless to do anything about it for the reason that the answer of Colorado Springs amounts to a collateral attack upon the 1958 action of the Commission; and (3) that this assertion is made notwithstanding the admitted fact that Colorado Springs is serving the contested area, has always served it, and that Mountain View has never served it. Mountain View says that its 1958 certificate has become law and, therefore, nothing can be done with relation to that certificate. If this assertion be true within the context of regulation, it is just as true and applicable to the 1941 decision *206 granting the disputed territory to Colorado Springs. If Mountain View’s argument were sound, the 1941 decision in favor of Colorado Springs would be res judicata and the Commission would have lacked jurisdiction to issue its 1958 order and decision insofar as it related to the overlapped territory. Furthermore, the 1958 petition would also have been a collateral attack upon the 1941 decision awarding Section 5 to Colorado Springs.
A certificate of public convenience and necessity is a property right which cannot be taken from its owner without due process of law. Western Colorado Power Company vs. Public Utilities Commission and Delta-Montrose Rural Power Lines Association, 163 Colo. 61, 428 P.2d 922. Mountain View argues that due process had been extended to Colorado Springs on the hearings on Mountain View’s application for a territorial certificate since Colorado Springs had notice of the hearing. However it is disclosed by the record that a certificate of public convenience and necessity was granted to Mountain View in a six county area described by metes and bounds. This description is single-spaced and one and two-thirds legal pages long. Colorado Springs was not advised that part of its territory was included within the subject matter of the Mountain View application. Further, Mountain View advised the Commission, under oath, that no other utility was supplying service within the area sought by Mountain View. The decision of the Commission does not contain any language that could be construed to be a finding of fact that Colorado Springs had abandoned, or, through its activity or nonactivity, created a basis for the taking away of any portion of its certificate issued in 1941.
Moreover, the 1958 decision discloses that Mountain View refrained from including areas in that application which were in conflict with another cooperative because of that same conflict. It is therefore reasonable to assume that Mountain View inadvertently included the territory certificated to Colorado Springs in its application but *207 more probably would have excluded it on the same basis that it excluded other territories. The Commission made no findings whatsoever in respect to the territory under dispute in this case.
The record falls far short of showing due process to Colorado Springs on the issue of whether that territory should be removed from its certificate by the 1958 decision. In the Western Colorado Power Company case, supra, this court stated, inter alia:
“Insofar as any of Western’s prior certificates granted Western rights to serve in precisely defined areas, those rights were property rights which may not be taken from Western except by due process of law. Therefore, to the extent that the P.U.C. order superseded any previous certificates expressly granting Western the exclusive right to serve in specifically described areas, the order was invalid and must be vacated.”
The Commission had no jurisdiction to grant a certificate to one party covering an area that had already been granted to another party without affording true due process of law to the first owner of the certificated area. The record discloses that at no time did the Commission or Colorado Springs have reason to believe that the removal of the disputed territory from the certificate of Colorado Springs was involved, and therefore no notice was given in respect to such an issue; nor was evidence adduced to support such a finding; nor was such a finding of fact ever made.
The judgment is affirmed.
Mr. Justice McWilliams, Mr. Justice Hodges and Mr. Justice Groves concur.